CALDWELL FURNACE FOUNDRY CO. ET AL. V. PECK-WILLIAMSON HEAT-
ING & VENT. CO.

1. AMENDMENT TO PETITION TO CORRECT DESCRIPTION OF DEFENDANT, ADMISSIBLE
UNDER LAN. R. L. 8629 (R. S. 5114).

An amendment to a petition, filed for the purpose of correcting the de-
scription of the defendant, does not state any new and distinct cause of
action, and is permissible under Lan. R. L. 8629 (R. S. 5114).

2. EVERYTHING NECESSARY TO SUSTAIN OVERRULING OF MOTION TO QUASH SERVICE
OF SUMMONS, PRESUMED IN ABSENCE OF BILL OF EXCEPTIONS.

In the absence of a bill of exceptions containing the evidence offered upon a
motion to quash the service of summons, a reviewing court will presume
that the court below found from the evidence every fact in issue necessary
to sustain its action in overruling the motion.

3. CONSTRUCTION OF SPECIAL CHARGE THAT TO RENDER ASSIGNMENT OF CONTRACT
VALID, THERE SHOULD BE A NEW AGREEMENT "SIMULTANEOUSLY."

A special charge to the jury to the effect, that in order to render an as-
signment of the contract valid there would have to be a new agreement
between the parties "simultaneously," will be interpreted to mean that
the new agreement be or exist between the parties simultaneously, and
not that it must be made between them simultaneously.

4. MEASURE OF DAMAGES FOR BREACH OF CONTRACT FOR FUTURE DELIVERY OF COM-
MODITIES IS DIFFERENCE BETWEEN CONTRACT AND MARKET PRICE.

The measure of damages for breach of a contract for future deliveries of
manufactured articles, where the time of performance of the contract has
expired, is the difference between the contract price and the market
price, or if there be no market price, the difference between the contract
price and that for which the plaintiff, by the exercise of diligence and
judgment, could obtain them at the times and in the quantities needed
within the limits of the contract.

ERROR to Hamilton common pleas court.

**Goulder, Holding & Masten** and **E. G. Kinkead,** for plaintiff in
error:

**Matthews & Merrell,** for defendant in error.

GIFFEN, J.

On February 19, 1902, the Caldwell Furnace Foundry Company,
a corporation organized under the laws of West Virginia, and having
its principal office in Toledo, Ohio, entered into a contract with the
Peck-Williamson Heating and Ventilating Company, for the making
of certain gray iron castings at Ft. Payne, Alabama. The contract
covered a period of four and one-quarter years, beginning April 1,
1902, and called for not exceeding 2,500 tons a year. It required the

defendant in error to order not less than 100 nor more than 250 tons each month, but must order 1,600 tons each year. The defendant in error was to furnish all patterns, and the foundry company the flasks and follow-boards. It provided that the defendant in error should pay three dollars a ton as liquidated damages for every ton that it refused to take on the contract. That if the foundry company refused to carry out the terms or conditions of the contract, or if it failed or refused to make and ship castings in accordance with the orders of defendant in error, it should pay all losses and damages which defendant in error sustained by reason of such failure. It was required on the tenth day of each month that accounts for all transactions under the contract for the next preceding calendar month must be settled between the parties. The castings were to be delivered f. o. b. Cincinnati and the price, which started at two cents a pound, was to be readjusted at the end of every six months according to the then price of pig iron in the Cincinnati market as shown by the "Iron Age."

About March 5, 1902, said West Virginia corporation executed a bond, with the Bankers Surety Company as surety, in the sum of $25,000, conditioned for the faithful performance of the West Virginia corporation's obligations under said contract for the period of two years, to wit, from April 1, 1902, to April 1, 1904. This bond contained the following provisions:

"That the surety company shall be notified in writing by registered letter mailed to said surety company at its principal office in Cleveland, of any act on the part of said principal which shall involve a loss for which the surety is responsible, and immediately after the occurrence of such act shall have come to the knowledge of the obligee or its duly authorized representative or representatives who shall have supervision of said contract.

"That the surety shall not be liable for any loss growing out of, or caused by, or resulting from, acts of God, storms, lightning, fire, riots, or strikes.

"That any suits at law or proceedings in equity brought against this bond to recover any claim hereunder against the surety must be instituted within six months after the first breach of said contract and within six months from the date responsibility of the surety for the further acts of the principal shall have ceased."

In July, 1902, an action was brought by the Peck-Williamson Heating and Ventilating Company against the Caldwell Furnace Foundry Company, a New Jersey corporation, and the Bankers Surety Company, upon a bond alleged to have been made by said Caldwell Furnace

Foundry Company, a New Jersey corporation, as principal, and the Bankers Surety Company as surety.

On February 23, 1903, the Peck-Williamson Company filed an amended petition in which it stated that its cause of action was founded upon a bond made by the Caldwell Furnace Foundry Company, a West Virginia corporation, as principal, and the Bankers Surety Company, as surety. A general demurrer to the amended petition by the foundry company, and a motion to strike from the files by the surety company, were each sustained, and thereupon the plaintiff below filed a second amended petition, with the following additional averment:

"Plaintiff further says that the defendant named in the caption of the original petition herein as the Caldwell Furnace Foundry Company and the corporation of that name that entered into the contract and bond set out in said petition, was and is a corporation of the state of West Virginia, and was so described in the bond sued on, and that plaintiff had no contract and bond with any other corporation of that name, and only the one sued on with the West Virginia corporation, and the summons herein was served upon the managing agent of the West Virginia corporation and the intent and purpose of filing said petition was to sue that corporation of that name of West Virginia, and it has no cause of action whatever against any New Jersey corporation, and the allegation in said original petition that the said Caldwell Furnace Foundry Company was a corporation of the state of New Jersey, was a clerical error, an inadvertence and a slip of the pen, and the contract sued on in this amended petition is the same one as set up in the original petition."

The surety company duly excepted to the order of the court allowing the second amended petition to be filed and thereafter the West Virginia corporation, appearing for the purpose of motion only, made a motion to quash the alleged service of summons upon it, which was overruled. Thereupon the defendants each filed an answer and cross petition, and set up a modification of the contract whereby the foundry company was released from filling orders for April and May, 1902, and alleged that the foundry company had performed all of its obligations of the contract as modified, and pleaded the strike of the molders as a defense, and six months limitation as a bar, and that without the knowledge and consent of the surety company, but with the knowledge and consent of the plaintiff, a West Virginia corporation, assigned the contract of the New Jersey corporation, whereby it was released from all liability. That the plaintiff had broken said contract

by replevying its patterns and refusing to permit any more castings to be made, and pray judgment for liquidation damages at three dollars a ton for 6,500 tons not ordered by plaintiff under said contract, and set up various other claims by way of cross petition.

A reply to the answers and cross petitions is substantially a general denial of all new matters set up. Upon trial, the verdict was returned for the plaintiff, and judgment entered thereon.

The first question presented is, that the court erred in allowing the second amended petition to be filed. It is claimed by counsel for plaintiff in error that the plaintiff, having alleged in his original petition that the defendant foundry company was a corporation organized under the laws of New Jersey, could not by amended petition aver that such defendant was a corporation organized under the laws of West Virginia, and that thereby a new and distinct cause of action was stated, and that under Lan. R. L. 8629 (R. S. 5114), no such amendment is permitted. It is conceded that if the second amended petition states any new and distinct cause of action from that stated in the original petition, it cannot be filed under this section, but the cause of action is the same, being based upon the identical bond relied upon in the original petition, which was executed by the foundry company, a corporation organized under the laws of West Virginia. The change made was not of the essence of the cause of action, but was descriptive of the defendant, and could not in any wise injuriously prejudice the defendants.

The precise question here involved has been decided by the Supreme Court of the United States in a case coming under a similar statute of the state of California, in which the second proposition of the syllabus is as follows:

"The amendment stating that the plaintiff was traveling upon a second-class ticket instead of a first-class ticket, and that the plaintiff in error was chartered by an act of congress instead of by a statute of Massachusetts as originally averred, did not state a new cause of action." *Atlantic & Pac. Ry.* v. *Laird,* 164 U. S. 393 [17 Sup. Ct. Rep. 120; 41 L. Ed. 485].

The court did not therefore err in permitting the second amended petition to be filed.

The next question presented is whether the Caldwell Furnace Foundry Company, the West Virginia corporation, was legally served with summons. The summons commanded the sheriff of Lucas county, Ohio, to notify the Caldwell Furnace Foundry Company, a corporation, and the return shows service "by delivering to James W. Caldwell,

Foundry Co. v. Heating & Vent. Co.

president of said company, a true and certified copy .of this writ with indorsements thereon.''

The West Virginia corporation made a motion to quash the summons, and to dismiss the action against it for want of jurisdiction; which motion contained the following allegations:

''That at the time said summons was served, the corporation making this motion had obtained no certificate from the secretary of state of Ohio, authorizing it to do business in the state of Ohio, nor had it appointed any person in this state upon whom service of process might be served within this state; nor was it doing or attempting to do any business in the state of Ohio, nor had it any place of business in the state of Ohio, nor had it any managing or other agent in the state of Ohio.''

The entry overruling this motion is as follows:

''This cause came on to be heard on the motion of the Caldwell Furnace Foundry Company, a corporation under the laws of West Virginia, to quash the service of process on it, and upon the affidavits and proofs and the process and the return, and the court finds that said process was properly served on the defendant making this motion, that the allegation of the original petition alleging that defendant was a New Jersey corporation was not binding on plaintiff, and was amendable and was amended and cured by the second amended petition, and said motion is overruled; to all of which the Caldwell Furnace Foundry Company, a corporation under the laws of the state of West Virginia, excepts.''

In the absence of a bill of exceptions containing the evidence offered upon the motion, it must be presumed that the court found from the evidence every fact in issue necessary to sustain the judgment of the court in overruling the motion, and that it found that the president, upon whom the summons was served, was the managing agent of the company in the state of Ohio. The ruling of the court was therefore final and binding upon the foundry company in all the subsequent proceedings of the case.

The motion of the surety company to strike the second amended petition from the files, upon the ground that it set up a new cause of action from that set up in the original petition, was properly overruled, for the reason above shown, that it was not a new and different cause of action.

.The allegation that the defendant foundry company was prevented from carrying out its contract by reason of the strike of the molders is

not supported by very weighty evidence, and the jury having found against the defendant on that issue, the court will not now disturb it.

The second special instruction given by the court to the jury at the request of the plaintiff, and objected to by the defendant, is as follows:

"I charge you that the obligations of the Caldwell Furnace Foundry Company under the contract of February 19, could not be assigned to the third party without the concurrence of the plaintiff, and in order to effectuate a substitution in that contract of the New Jersey corporation for the original Caldwell Furnace Foundry Company, there would have to be a new agreement between the three parties simultaneously, whereby not only the New Jersey corporation assumed the contract, but the plaintiff must have accepted it in the place of, and discharged, the West Virginia corporation."

The objection refers to the use of the word "simultaneously," counsel claiming that the new agreement need not be made between the parties simultaneously. The error lies in the construction given to the special charge by counsel for plaintiff in error, who assumes that it requires that the agreement shall be entered into by the three parties at the same time, whereas its only requirement is that it be or exist between the three parties simultaneously. It follows therefore that although the West Virginia corporation at one time assigned its contract to the New Jersey corporation, and at a subsequent date the Peck-Williamson Company either expressly or impliedly assented to such assignment, yet thereafter there would be or exist at the same time a new agreement between three parties. It is clear therefore that the exception to the charge is not well taken.

Special instruction No. 5 given at the request of plaintiff is not inconsistent with the general charge, which states that,

"A valuable consideration consists either in some right, interest, profit, or benefit accruing to the party making the promise, or some forbearance, detriment, loss, responsibility, act, labor, or service given, suffered or undertaken by the party to whom made."

It certainly is not good law as stated in counsel's brief that "the loss, benefit or damage" to the promisor is a valuable consideration.

We have examined the special instructions requested to be given to the jury by the plaintiff in error, but refused by the court, and conclude that no error was committed by such refusal, although we deem it unnecessary to discuss any of the charges except the one pertaining to the measure of damages, which is as follows:

Foundry Co. v. Heating & Vent. Co.

"The measure of plaintiff's damage, if any, because of its necessity to secure its castings elsewhere, if such necessity existed, would be the difference betwen the contract price and the lowest price at which plaintiff could have relet the contract or made a new similar contract at the date of the breach, at the same or a similar market."

This rule was applied and sanctioned in the case of *Roehm* v. *Horst,* 178 U. S. 1 [20 Sup. Ct. Rep. 780; 44 L. Ed. 953], and would be a proper charge in this case, if, at the time of the trial, the period of two years covered by the bond had not expired. But inasmuch as the time for performance of that part of the contract had expired, it was competent to ascertain the exact cost of labor and material necessary to manufacture the castings and the amount needed by the plaintiff in error at the several times of delivery, or ascertain the market value of the castings if they had any. The object in all cases is to ascertain as nearly as possible what loss plaintiff has suffered by reason of the breach of the contract.

We are of the opinion, that the measure of damages stated by the court in its general charge was more appropriate to the facts in this case, and was as follows:

"The difference between the contract price and the market price of castings of a like character and quality as those contracted for. If they had no market price, then the difference between the contract price and that which the plaintiff, by the exercise of diligence and judgment, was able to fairly obtain them for from other foundries."

The objection to this charge is, that it fails to state the time at which the market price, or if there be none, the price at which the plaintiff, by the exercise of diligence and judgment, was able to obtain, should be ascertained. While, no doubt, it would make the charge more definite and certain to state the time at which the price should be fixed, yet we think, in the absence of such statement, it would be fairly inferred that such price was to be ascertained at the several times for delivery, and in such quantities as the plaintiff in error needed, within the limits specified in the contract.

The first paragraph quoted from the general charge standing alone and unexplained would be erroneous, but the succeeding paragraph indicates the purpose for which the jury may not consider conversations and negotiations prior to the signing of the contract, to wit, "not for the purpose of varying or contradicting the contract itself."

The third paragraph quoted from the general charge is not even misleading, as the jury could hardly infer that the plaintiff, having

waived the deliveries for the months of April and May, and the defendant, Bankers Surety Company, having consented thereto, plaintiff would be entitled to recover against the surety company for a failure to make such deliveries.

We find no prejudicial error, and the judgment will be affirmed.

**Jelke** and **Swing, JJ.,** concur.